T.C. Memo. 1997-487


UNITED STATES TAX COURT


RICHARD WALTER DRAKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6119-96.                    Filed October 28, 1997.


Richard Walter Drake, pro se.

<u>Robert W. Mopsick</u> and <u>William F. Halley</u>, for respondent.


MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant

to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent

---

[1]    Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.
    Petitioner originally elected to have his case heard as a
small tax case.  See sec. 7463.  Thereafter, pursuant to
petitioner's motion, the "S" designation was removed.

determined a deficiency in petitioner's Federal income tax for the year 1993 in the amount of $2,972 and an accuracy-related penalty in the amount of $534 pursuant to section 6662(a). The issues for decision are: (1) Whether petitioner is entitled to Schedule E deductions in excess of the amount allowed by respondent; (2) whether petitioner is entitled to a deduction for a contribution to an Individual Retirement Account (IRA); (3) whether petitioner is entitled to itemized deductions; and (4) whether petitioner is liable for an accuracy-related penalty.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. Petitioner resided in Elberon, New Jersey, at the time his petition was filed.

Petitioner purchased the property located at 60 Norwood Avenue in Elberon, New Jersey, approximately 20 years prior to the year in issue. The property was part of an old estate of approximately 2-1/2 acres. The original buildings included a farmhouse, a cottage, a carriage house, a cow barn, and a second barn. Petitioner restored and rebuilt the property, and converted four of the buildings into rental units. Petitioner lived on the upper level of the carriage house and used the lower level as a studio and storage area.

During the year in issue, petitioner made various repairs and additions to the property. After a sewer line broke,

petitioner paid $721[2] to have the basement of one of the houses power washed and sanitized and $1,390 for repairs to the floor due to water damage from the sewer line break. In addition, petitioner had the exteriors of the houses power washed, primarily in preparation for painting, at a cost of $1,616. Petitioner also purchased various supplies, including paint, paint supplies, and lumber, in order to repair and maintain the property. Petitioner purchased and installed a "Stop" sign along the driveway of the property. The sign cost $29. Petitioner also paid $30 for computer software to produce lease forms.

During the year in issue, petitioner owned two vehicles. Petitioner owned a van which he and Brian Hegarty, who helped him perform work on the property, used to haul items on the property itself. Petitioner also owned a car.

In addition to petitioner's activities with respect to the rental property during the year in issue, petitioner was employed by Delta Air Lines (Delta) as a flight attendant. Petitioner had been employed by Pan American since 1963. Sometime prior to the year in issue, petitioner became an employee of Delta as a result of Delta's purchase of a portion of Pan American's routes. Petitioner was required to purchase his uniforms for use as a flight attendant with Delta. Petitioner was permitted to charge these expenses which Delta recorded as an account receivable from

---

[2] All amounts have been rounded.

petitioner. Petitioner's Form W-2 issued by Delta indicates that petitioner was a participant in Delta's pension plan during 1993.

On Schedule E of his Federal income tax return filed for 1993, petitioner reported rents received in the amount of $21,995 and claimed deductions for expenses as follows:

| | |
|---|---:|
| Advertising | $340 |
| Auto and travel | 1,710 |
| Cleaning and maintenance | 2,617 |
| Insurance | 2,602 |
| Legal and other professional fees | 127 |
| Mortgage interest | 27,263 |
| Repairs | 4,896 |
| Supplies | 78 |
| Taxes | 13,780 |
| Utilities | 1,721 |
| Total | $55,134 |

Thus petitioner claimed a loss of $33,139 from rental real estate. Petitioner claimed a deduction of $2,000 for a contribution to an IRA. Petitioner did not claim itemized deductions but rather claimed a standard deduction of $5,450.

In the notice of deficiency respondent allowed petitioner Schedule E deductions for mortgage interest and real estate taxes in the amounts of $20,447 and $11,481, respectively. Respondent determined that the remaining mortgage interest and real estate taxes were paid with respect to the portion of the property that was petitioner's home and office. Respondent allowed petitioner a deduction for office expense of $5,322 and allowed petitioner Schedule A deductions totaling $5,322. Respondent disallowed the remaining expense claimed on petitioner's Schedule E with the

exception of supplies in the amount of $78. As a result of these adjustments, respondent increased petitioner's taxable income by $17,806. Respondent disallowed petitioner's deduction for an IRA contribution in full. In addition, respondent determined that petitioner was liable for an accuracy-related penalty of $534 pursuant to section 6662(a) for negligence or intentional disregard of rules or regulations.

At trial, petitioner filed a Schedule A for 1993 claiming deductions for mortgage interest of $3,407, real estate taxes of $1,913, charitable contributions of $300, and miscellaneous expenses of $1,050 before the 2-percent floor. The Court filed this document as petitioner's amendment to petition.

Respondent's determinations are presumed to be correct, and the burden is on petitioner to prove that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Further, deductions are a matter of legislative grace, and petitioner must prove entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must maintain adequate records to substantiate the amount of any deductions claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Generally, when evidence shows that a taxpayer has incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount. Cohan v. Commissioner, 39

F.2d 540 (2d Cir. 1930). However, the Court may bear heavily against the taxpayer "whose inexactitude is of his own making." Id. at 544. An exception to the Cohan rule is section 274(d), which requires strict substantiation of certain expenses, including those paid or incurred with respect to certain listed property. Sec. 274(d). Listed property includes automobiles. Sec. 280F(d)(4). Section 274(d) requires substantiation of these expenses either "by adequate records or by sufficient evidence corroborating the taxpayer's own statement". Sec. 274(d).

Rental Expenses

Section 469 limits the allowance of passive activity losses. Section 469(a) provides that for an individual, no passive activity loss will be allowed for a taxable year. Section 469(c)(2) defines the term "passive activity" to include any rental activity. A "passive activity loss" is the amount by which losses from passive activities exceed income from such activities. Sec. 469(d). The disallowance set forth in section 469(a) shall not apply to the portion, not to exceed $25,000, of the passive activity loss which is attributable to all rental real estate activities with respect to which an individual taxpayer actively participated in the taxable year. Sec. 469(i).

Petitioner argues that section 469 does not apply to his rental activity. Petitioner contends that he is entitled to claim a loss from rental real estate in the amount of $27,817.

Respondent concedes that petitioner actively participated in his rental activity in the year in issue. Respondent, however, argues that petitioner has not substantiated expenses in excess of those allowed in the notice of deficiency.[3]

Petitioner presented numerous receipts and his own testimony to substantiate his expenses. Based upon the record, we find that petitioner has substantiated cleaning, maintenance, and repair expenses totaling $3,727 related to the sewer line break and other power washing. We have reviewed petitioner's remaining receipts for purchases of items for repairs. The majority of the purchases were made at home improvement or hardware stores and are for amounts under $100 each. It is not readily apparent what every receipt is for--some do not contain a description of the items purchased. However, most of the receipts contain a description of the items purchased including paint, drop cloths, boards, caulking materials, and other related materials. Petitioner's own testimony concerning the purchases did little to explain the purpose of the purchases as it was extremely general. The receipts reflect purchases totaling approximately $2,400, excluding the repairs related to the sewer line break. Based on the record, we find that petitioner paid additional repair expenses in the amount of $1,800.

---

[3] Respondent's brief, due on or before May 27, 1997, was postmarked May 25, 1997, and was filed by the Court on May 28, 1997. Petitioner requests that we strike respondent's brief as untimely. We deny petitioner's request.

Petitioner presented receipts in an attempt to substantiate additional cleaning expenses. The purchases total approximately $200. It is not clear from the record for what purposes these purchases were made, and we find that petitioner has not established that he paid cleaning expenses above those paid for the power washing as above.

In an attempt to substantiate his claimed advertising expenses, petitioner presented receipts and credit card statements. Petitioner testified that he made copies of color photographs of the property, and the evidence includes receipts for $3 for the cost of such copies. Petitioner testified that he was attempting to sell the property and that he provided the copies to a real estate agent or to potential buyers. The credit card statements include charges for the Asbury Park Press classified section totaling $173. Petitioner testified that he paid these charges in connection with advertisements he placed in the paper in an attempt to sell the property. The final receipt in this category is a restaurant bill for $81. There is no convincing evidence concerning the purpose for this expenditure. Petitioner's advertising expenses were not related to his rental activity. Petitioner testified that his real estate activity included selling properties; however, petitioner presented no other evidence concerning this matter, and we are unconvinced by

his testimony alone. Therefore, petitioner has not established that he is entitled to a deduction for advertising expense.

Petitioner presented two bills for fire insurance premiums from 1992 in an attempt to substantiate his insurance expense. Petitioner has not established through his testimony or other evidence that he paid any amounts for fire insurance during the year in issue.

Petitioner presented three receipts in an attempt to substantiate additional rental expenses that he identified as "legal" expenses. The purchases include $29 for the stop sign and $30 for the lease form software. Based on the record, we find that petitioner has established that he paid additional expenses with respect to his rental activity in the amount of $59.

Finally, petitioner presented four receipts for purchases of automobile parts and two receipts for purchases of gasoline. In addition, petitioner presented two receipts for amounts of $660 and $216 paid for repairs to the van. Based on petitioner's testimony and that of Brian Hegarty, we are satisfied that the van was used exclusively with respect to petitioner's rental activity. Petitioner has established that he paid $876 in expenses with respect to the van during the year in issue. Petitioner has not established the purpose for the remaining expenditures evidenced by the other receipts. Petitioner also

presented a bill in the amount of $1,263 for automobile insurance premiums for three vehicles; two cars and a pick-up truck. Petitioner has not established that he used any of these vehicles in his rental activity or that the amount of this bill was paid in the year in issue. Petitioner has established that he is entitled to a deduction for automobile expense in the amount of $876.

Petitioner presented no evidence to establish that he paid any utilities expense during the year in issue. Petitioner has not established that he incurred a loss in excess of $25,000, and therefore we need not reach petitioner's argument that section 469 does not limit a loss in excess of $25,000.

IRA Deduction

Generally, an individual is allowed a deduction for contributions to an IRA in an amount not in excess of the lesser of $2,000, or an amount equal to the compensation includable in the taxpayer's gross income. Sec. 219(a) and (b)(1). Section 219(g) limits the allowable deduction where the individual is an "active participant" in a qualified retirement plan. In the case of an unmarried taxpayer, the $2,000 limitation is reduced by an amount determined using a ratio in which the excess of the taxpayer's adjusted gross income, subject to certain adjustments, over $25,000 is divided by $10,000. Sec. 219(g)(2) and (3). As relevant here, adjusted gross income is determined after the

application of section 469.  Sec. 219(g)(3).  An "active participant" is defined to include an individual who is an "active participant" in any of certain specified plans.  Sec. 219(g)(5).

Petitioner did not raise the issue of whether the Delta pension plan is of the type listed in section 219(g)(5). Therefore, we find that petitioner has conceded that the plan is among those so listed.  However, petitioner contends that he was not an active participant in Delta's pension plan.  He therefore argues that he is entitled to a deduction for a $2,000 IRA contribution.

Respondent contends that petitioner was an active participant in Delta's plan.  Respondent apparently concedes that petitioner made a $2,000 contribution to an IRA for the year in issue.  Respondent argues that petitioner is prohibited from deducting any amount contributed to an IRA during the year in issue.  Respondent relies on section 1.219-1(b)(2), Income Tax Regs.

Petitioner testified that he was not a participant in Delta's pension plan during the year in issue.  The only other evidence in the record is the Form W-2 issued by Delta indicating that petitioner was a participant in its pension plan.  Based on the scant evidence in the record, we find that petitioner has

failed to establish that he was not an active participant within the meaning of section 219(g) during the year in issue.

Petitioner's IRA contribution deduction is subject to the limitations provided in section 219(g). We do not agree with respondent that petitioner's deduction is necessarily disallowed in full. Section 1.219-1(b)(2), Income Tax Regs., provides that no deduction is allowable under section 219(a) to an individual if such individual is an active participant in any of the plans listed therein. Clearly, section 1.219-1(b)(2), Income Tax Regs.,[4] is not consistent with the current version of section 219(g) to the extent that the latter allows a deduction to an unmarried individual who is an active participant in a qualified plan and who has adjusted gross income of less than $35,000. If petitioner's adjusted gross income for 1993 is less than $35,000, he is entitled to a deduction under section 219 of $2,000 less the amount disallowed by application of section 219(g), to be calculated in the Rule 155 computation.

Itemized Deductions

Petitioner contends that he is entitled to itemized deductions for the year in issue. Petitioner contends that he made charitable contributions in the amount of $300 and that he incurred unreimbursed employee expenses in the amount of $1,050.

---

[4]    Sec. 1.219-1(b)(2), Income Tax Regs., was published in 1980 prior to the enactment in 1986 of sec. 219(g), allowing a deduction to active participants in certain circumstances.

Respondent contends that petitioner has failed to establish that he made any contributions or that he paid any additional expenses during the year.

Section 170 allows a deduction for any charitable contributions made during the taxable year. Petitioner testified that he made cash donations in the amount of $25 each month to the Episcopal church he attended, but provided no other evidence to substantiate this amount. We find that petitioner is entitled to a deduction for charitable contributions in the amount of $150. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

Petitioner contends that he paid deductible unreimbursed employee business expenses during the year in issue. Petitioner testified that he paid $211 for luggage which he was required to purchase as a flight attendant. Petitioner also testified that he paid amounts for meals in excess of the amounts reimbursed by Delta. Petitioner did not present any other evidence to substantiate these expenses. Petitioner has not convinced us that these amounts were paid in the year in issue.

Petitioner also contends that he paid $519 for new uniforms he purchased as a Delta employee. Petitioner presented copies of his "Employee's accounts receivable statement" issued by Delta in an attempt to substantiate this amount. The first statement is dated September 15, 1992, and reflects a previous balance of $517 and new charges of $117 for uniforms and accessories. Thus, the

ending balance was $634. However, there is no evidence indicating the charges for which the beginning balance of $517 was derived. A statement dated November 15, 1992, shows a balance forward of $634, new uniform charges of $100.18, and an ending balance of $734. A statement dated March 15, 1993, shows a balance forward of $734, other charges of $15, and an ending balance of $749. Petitioner has only established that he charged uniforms in the amount of $217. Petitioner testified that he paid the balance on his account by the end of 1993 because he stopped working for Delta at that time. Based on the record, petitioner has established that he purchased uniforms at a cost of $217, and he is entitled to a deduction for unreimbursed employee expenses in this amount subject to the 2-percent floor.

Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty for negligence and disregard of rules or regulations under section 6662(a). Petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of any underpayment of tax that is due to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). "Negligence" is any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue

Code.  Sec. 6662(c).  "Disregard" includes any careless, reckless, or intentional disregard.  <u>Id.</u>  The failure to maintain adequate records may constitute negligence.  <u>Zafiratos v. Commissioner</u>, T.C. Memo. 1992-135, affd. without published opinion 993 F.2d 880 (3d Cir. 1993).

Petitioner did not present any evidence to establish that the accuracy-related penalty should not apply.  Respondent is sustained on this issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.